# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) Criminal Case No. 2:23cr00001-004 |
| v. | ) |
| | ) **REPORT AND** |
| **ROBERT LEE JENKINS,** | ) **RECOMMENDATION** |
| Defendant | ) |

### I.  Background

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3), and upon the defendant's written consent, this case was referred to the Honorable Pamela Meade Sargent, United States Magistrate Judge, to conduct a plea hearing.

### II. Facts

The defendant has been charged in a multiple-count Indictment. On July 31, 2023, a plea hearing was conducted before the magistrate judge, and the defendant entered a plea of guilty to Count Two of the Indictment, charging him with conspiracy to distribute and possess with intent to distribute 1000 grams or more of a mixture or substance containing heroin, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).

At this hearing, the defendant was placed under oath and testified that he is 26 years old and that he had completed the 10th grade in high school and

attended classes and was a Certified Nurses Assistant. The defendant testified that he reads and writes the English language. The defendant also testified that he was not under the influence of any drug, medication or alcoholic beverage at the time of his plea hearing. Defense counsel stated that she had no reason to suggest that the defendant was not competent to enter his plea.

    The defendant stated that he was fully aware of the nature of the charge against him and the consequence of pleading guilty to that charge. The defendant was advised in open court of the charge contained against him in the Indictment. He testified that he had fully discussed the charge, and his case in general, with his counsel. He also testified that he had read the Plea Agreement in its entirety, and he had discussed the Plea Agreement with his counsel before signing the Agreement. He stated that he understood the terms of the Plea Agreement and that the document presented to the court set forth his agreement with the Government in its entirety. The defendant specifically testified that he understood that, under the terms of the Agreement, he was waiving any right to directly appeal or collaterally attack his conviction and sentence, insofar as he may legally do so. The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offense charged. The defendant also stated that no one had made any promises, other than those contained in the Plea Agreement with the Government, assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offense with which he is charged is a felony and that, if his plea is accepted, he will be adjudged guilty of the offense and that this adjudication may deprive him of valuable civil rights such as the right to vote, the right to hold public office, the

right to serve on a jury and the right to possess a firearm. The defendant further testified that he understood that the offense with which he is charged is a drug offense and that, if his plea to this charge is accepted, he will be adjudged guilty of the offense and that this adjudication will make him ineligible for certain federal benefits including certain Social Security and food stamp benefits.

The defendant was informed of the possible maximum and mandatory minimum penalties provided by law for the offense with which he is charged. In particular, the defendant stated that he understood that the offense to which he was pleading guilty carried a mandatory minimum sentence of 10 years' imprisonment.

The defendant also was informed that, under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant testified that he and his counsel had discussed how the Sentencing Guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the guideline sentence for his case until after a presentence report has been completed and both parties have an opportunity to challenge the reported facts and the application of the Guidelines. The defendant stated that he understood that, after the applicable guideline range was determined, that the district judge has the authority in some circumstances to depart from the Guidelines and impose a sentence that is more severe or less severe than the sentence called for by the Guidelines. He stated that he understood that the Sentencing Guidelines were no longer mandatory, and after

considering the Guidelines and the factors listed under 18 U.S.C. § 3553(a), the district judge may sentence outside of the Guidelines and up to the statutory maximum sentence. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney, the U.S. Attorney's Office or the U.S. Probation Office has given him. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison, he will not be released on parole and will serve his full term of imprisonment.

The defendant stated that he was stipulating that the following Sentencing Guidelines should apply to his case:

Section 2D1.1(c) for a base Offense Level of 30 based on at least 1 kilogram but less than 3 kilograms of heroin.

The defendant stated that he understood that, under the terms of the Plea Agreement, the Government would not object to him being given the benefit of sentencing under the "safety valve" provisions of Sentencing Guidelines Section 5C1.2 and 18 U.S.C. § 3553. He further stated that he understood that it would be up to the district judge to determine whether he was eligible for sentencing under this provision, and, if the district judge determined that he was not eligible for, or chose not to sentence him under, this "safety valve" provision, it would not be a basis to withdraw his plea.

The defendant also testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which would be waived or

given up if his guilty plea is accepted:

i. The right to plead not guilty to any offense charged against him;
ii. The right at trial to be presumed innocent and to force the Government to prove his guilt beyond a reasonable doubt;
iii. The right of assistance of counsel;
iv. The right to see, hear and cross-examine witnesses;
v. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses; and
vi. The right to decline to testify unless he voluntarily elected to do so in his own defense.

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his current counsel. He stated that he had no complaints whatsoever regarding his attorney's representation. The defendant also testified that he understood the possible consequences of his plea and asked the court to accept his plea of guilty to Count Two of the Indictment.

The Government and the defendant presented the following Agreed Statement of Facts regarding the offense with which the defendant is charged:

> Between September 1, 2021, and July 26, 2022, Jenkins and others knowingly and intentionally conspired to distribute and possess with the intent to distribute 1,000 grams or more of a mixture or substance containing heroin, a Schedule I controlled substance, in Lee County, Virginia, and elsewhere. Lee County is within the Western District of Virginia.

  During the relevant period, Jenkins drove co-conspirator Robert Warr around the Knoxville, Tennessee area to distribute heroin to co-conspirators Billy King, Billie McGuire, and others, some of whom further distributed the heroin to individuals in Lee County, Virginia. Although Warr supplied the heroin and handled most of the drug transactions, Jenkins knew he was driving Warr around to distribute heroin and assisted Warr with counting money from the drug transactions. Jenkins also provided Billy King with money to rent at least one hotel room in Knoxville for the purpose of selling heroin.

  On July 26, 2022, Jenkins, Warr, King, and McGuire traveled from Knoxville to Jonesville, Virginia, in Lee County to meet an undercover law enforcement officer to sell two ounces of heroin and one ounce of methamphetamine for $4,000. While the hand-to-hand transaction took place between King and the undercover officer, Jenkins drove King, McGuire, and Warr part of the way to Virginia. Jenkins also was present in the vehicle while King sold heroin to customers on the way to Virginia for the controlled buy.

  Jenkins had knowledge of the overall objectives and scope of the conspiracy and knowingly and voluntarily participated in it.

After the Government presented its summary of this evidence, the defendant stated that he agreed that the Government could present this evidence at trial, and he had no dispute with or objection to the Government's summary of its evidence.

## PROPOSED FINDINGS OF FACT

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;
2. The defendant is aware of the nature of the charge and the consequences of his plea;
3. The defendant knowingly and voluntarily entered a plea of guilty to Count Two of the Indictment; and
4. The evidence presents an independent basis in fact containing each of the essential elements of the offense to which the defendant is pleading guilty.

## RECOMMENDED DISPOSITION

Based upon the above findings of fact, the undersigned recommends that this court accept the defendant's plea of guilty to Count Two of the Indictment and adjudge him guilty of that offense.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

**DATED**:    This 1st day of August, 2023.

/s/   *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE